# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LESTER DOBBEY (R-16237), ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> IMHOTEP CARTER and ) <br> DELORES TREVINO, ) <br> ) <br> Defendants. ) | Case No. 12 CV 9223 <br><br> Judge Robert M. Dow, Jr. |

## MEMORANDUM OPINION AND ORDER

Pro se Plaintiff Lester Dobbey, an Illinois inmate at Stateville Correctional Center, filed this civil rights action pursuant to 42 U.S.C. § 1983 against Stateville Medical Director Imhotep Carter and Registered Nurse Delores Trevino (collectively "Defendants"). Plaintiff alleges that Defendants acted with deliberate indifference to his knee issues after he received a steroid injection to one of his knees. Pending before the Court are dispositive motions filed by all three parties to this lawsuit. For the reasons stated below, the Court grants Carter's motion for summary judgment [111], denies Trevino's motion for summary judgment [106], and denies Plaintiff's motions for summary judgment [105, 116]. The Court also grants Plaintiff's motion for an extension of time [144] to file his cross-motion for summary judgment. This case is set for further status hearing on 10/20/2015 at 9:45 a.m. Counsel for Defendants is requested to make arrangements for Plaintiff to participate by telephone.

## I. Background

The Court constructs the facts from the parties' various Local Rule ("L.R.") 56.1 Statements of Material Facts ("SOF"), which assist with "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th

1

Cir. 2000). All of the parties have filed L.R. 56.1 Statements in support of their motions for summary judgment, as well as responses to opposing parties' Statements, including: Plaintiff's SOF with respect to Trevino [104] and Trevino's Response [129]; Plaintiff's SOF with respect to Carter [117] and Carter's Response [126]; Trevino's SOF [107] and Plaintiff's Response [137]; and Carter's SOF [113], Statement of Additional Facts [134], and Plaintiff's Response [121]. For the most part, the parties have complied with L.R. 56.1 by supporting each fact statement and response with citations to the record. Where a party failed to respond to a proposed statement of fact—or failed to properly support his or her dispute of the proposed fact with citation to the record—the Court may consider the proposed statement to be true. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006); see also Fed. R. Civ. P. 56(e).

Plaintiff is, and was at all times relevant to this action, an inmate incarcerated at Stateville Correctional Center. [113], Carter SOF ¶ 3. Dr. Imhotep Carter was the medical director at Stateville from July 25, 2011 to May 10, 2012, *id.* at ¶ 5, and Nurse Delores Trevino was a registered nurse supervisor at Stateville during the relevant time period, [107], Trevino SOF ¶ 2.

On August 25, 2011, Plaintiff was scheduled to see Dr. Carter in Stateville's health care unit. [113], Carter SOF ¶ 6. That unit provides medical care for all of the 1,600 or more inmates at Stateville. *Id.* at ¶ 41. The parties disagree what occurred during Plaintiff's visit, but they agree that later that day, he filed a grievance claiming that Dr. Carter stated to him, "I'm not going to see you. I saw you a few weeks ago, and I hear and see your name to[o] much. So you can go back." [117], Pl.'s SOF ¶ 5. The grievance further stated that Plaintiff reported stomach pain, back pain, and knee swelling to Dr. Carter. According to Plaintiff's grievance, Dr. Carter responded to the complaints by telling Plaintiff, "Well, put in for a sick call!" *Id.*

The next month, a physician's assistant and medical technician noted Plaintiff's complaints of chronic knee pain, ordered x-rays, referred Plaintiff to the medical director, and provided analgesic balm and Tylenol. See [117], Pl.'s SOF ¶¶ 8-11. On October 7, 2011, Dr. Carter saw Plaintiff about his knee pain. *Id.* at ¶ 12. Dr. Carter observed tendinitis but saw no evidence of joint disease. *Id.* Dr. Carter noted in Plaintiff's file, "schedule knee steroid injections (Thursday)," and prescribed Plaintiff a knee sleeve. See *id.* at ¶¶ 13, 18. Plaintiff received the steroid injection several weeks later on October 27, 2011, at which point Dr. Carter believed that Plaintiff had a sports-related knee contusion. See *id.* at ¶ 24. Three days before administering the injection, Dr. Carter noted in Plaintiff's file that collegial review had approved the knee sleeve. *Id.* at ¶ 21.

Dr. Carter planned to have a follow-up appointment with Plaintiff three weeks after the injection. [117], Pl.'s SOF ¶ 24. According to Dr. Carter, his general practice is to follow up with patients to evaluate the effectiveness of injections and to check for complications. See *id.* at ¶ 27 (citing [117], Exh. B, ¶ 13). Dr. Carter also planned to evaluate whether Plaintiff should receive an injection in his right knee. *Id.* at ¶ 24 (citing [117], Exh. B, ¶ 10). The notes in Plaintiff's medical file state: "MD visit 3 wks. – will consider [right] knee steroid inj." [113], Carter SOF, Exh. E. Plaintiff did not have the planned follow-up exam three weeks later, however. To make matters worse, the injection caused Plaintiff's knee to hurt more than it had before, such that, at times, it would "give out," according to Plaintiff. [117], Pl.'s SOF ¶ 29 (quoting [113], Exh. B, Pl.'s Tr. 60:20-61:18).

Between October 27, 2011 (the day of the injection) and January of 2012, Plaintiff contends that he submitted approximately ten medical request slips (about one per week), in which he complained of the increased knee pain. *Id.* at ¶ 30. Plaintiff submits no evidence

3

suggesting that Dr. Carter received, or was aware of, any of these requests. See [113], Carter SOF ¶¶ 30, 58; [121], Pl.'s Resp. ¶ 30; see also [113], Exh. B, Pl.'s Tr. 73:2-18. Moreover, at Stateville, inmates' medical or "sick call" request slips are reviewed and triaged by the nursing staff, which prioritize medical services based on medical need. [113], Carter SOF ¶ 42. In Dr. Carter's experience, triage is widely performed by nurses at both prisons and public health facilities. *Id.* Although Dr. Carter always was available to consult with nurses about the triage prioritization, he reviewed inmates' sick call requests only when asked by a nurse. *Id.* at ¶ 43. Dr. Carter's practice was to initial, and place in an inmate's medical file, any medical request slips he reviewed.[1] See *id.* Plaintiff's medical file contains no medical request slips initialed by Dr. Carter. [113-2], Exhs. A-H. In addition to receiving and triaging medical request slips, the nursing staff was also responsible for scheduling appointments, as well as processing and following up with physician orders for medical equipment. [117], Pl.'s SOF and [133] Carter Resp. ¶ 49; [113] Carter SOF ¶ 44.

Plaintiff also wrote a grievance on November 25, 2011, detailing, among other ailments, the history of his knee problems, including that he was supposed to have a follow-up appointment three weeks after the steroid injection, but that no appointment had occurred. He further specified that he was supposed to receive knee braces, that he was experiencing pain in both knees, and that his knees "clicked" when he bent them.[2] See [104], Pl.'s SOF ¶ 31. The

---

[1] Plaintiff disputes Carter's statement regarding his practice of placing any slips that he reviewed in inmates' medical files. Plaintiff cites to Trevino's responses to his interrogatories in support. See [121], Plaintiff Resp. ¶ 43. Her responses, however, do not contradict Dr. Carter's statement. Nurse Trevino merely stated that there was no *requirement* that inmate medical request slips be kept in an inmate's folder, but that "individual staff members may have kept medical request slips for the Plaintiff in the medical file." [104], Exh. C, ¶¶ 3-4.

[2] Trevino objects to consideration of the November 25, 2011 grievance on hearsay grounds. The Court overrules the objection. The Court is not considering the grievance for the truth of what it asserts about Plaintiff's health issues or medical treatment; rather, the grievance establishes that Plaintiff in fact complained about knee pain on November 25, 2011, which Trevino does not dispute. See [129], Trevino Resp. ¶¶ 11-12.

4

parties dispute whether Dr. Carter reviewed the November 25, 2011 grievance. Dr. Carter states he was not consulted about the grievance and was unaware of the complaints therein. [113], Carter's SOF ¶¶ 17, 19. Plaintiff objects to these statements by Dr. Carter and cites to the Health Care Unit Policy and Procedure Manual, which states that "[a]ll offender complaints/grievances received in the Health Care Unit will be forwarded to the Health Care Unit Administrator's Office" and that the Administrator and Medical Director will review all offender complaints." [117], Pl.'s SOF ¶ 44, citing Exh. I.

On January 5, 2012, Nurse Trevino received, and responded to, the November 25, 2011 grievance, stating:

> [M]edical file shows 10/15/11 inmate was seen by LPN in urgent care for multiple complaints of stomach pain, back pain, knee pain, he was referred to MDSC for further evaluation. Condition ongoing. On 10/24/11 collegial review approved for knee sleeve. On 10/27/11 inmate was seen by Dr. Carter and had a left knee steroid injection. MD visit within 3 weeks of that to consider right knee injection. Condition ongoing.

[104], Pl.'s SOF ¶¶ 15-17 (citing Compl., Exh. K). After reviewing and responding to the grievance, it is undisputed that Trevino did not follow up with any medical personnel about Plaintiff's complaints of ongoing knee pain, not receiving the approved knee sleeve, and not having a follow-up appointment with Dr. Carter after the steroid injection. [129], Trevino Resp. ¶ 18. Although there are no directives or policies that would have prevented her from doing so, Trevino did not examine Plaintiff, schedule an appointment for him, or attempt to otherwise treat him after reviewing his grievance. See *id.* at ¶¶ 19-21.

On January 23, 2012, Plaintiff filed an emergency grievance stating, among other complaints, that he had not been scheduled for a follow-up exam after the steroid injection, that the injection did not work, and that his complaints had gone unanswered. See [129], Trevino Resp. ¶ 25. In the grievance, Plaintiff also requested knee braces and additional treatment for his

5

knees.[3]  *Id*. at ¶ 26.  Plaintiff subsequently was scheduled for an appointment the next day but it was canceled, because, according to the notes in Plaintiff's file, the facility was on "lockdown." See [107], Trevino SOF ¶¶ 17, 27.

On February 14, 2012, Dr. Carter completed a prescription order for a large knee sleeve for Plaintiff.  [126], Carter Resp. ¶ 36.  Dr. Carter subsequently saw Plaintiff on March 20, 2012, and assessed his complaints of left knee pain as mild degenerative joint disease with tendinitis, issued Plaintiff a low-bunk permit, and prescribed him Naprosyn (an anti-inflammatory drug). See *Id.* at ¶¶ 37, 39, 40.  It is undisputed that Dr. Carter did not prescribe Plaintiff any pain medication between October 27, 2011 and March 19, 2012.  *Id.* at ¶ 38.  After the March 20, 2012 appointment, Dr. Carter did not treat Plaintiff for any further complaints of knee pain. [113], Carter SOF ¶ 60.  Plaintiff's knee pains, though not completely resolved, were manageable after March 20, 2012.  [113 & 121], Carter SOF & Pl.'s Resp. ¶ 60

## II.  Legal Standard

Summary judgment is appropriate if, construing all facts and drawing all inferences in favor of the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Jajeh v. County of Cook*, 678 F.3d 560, 566 (7th Cir. 2012); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Once the party moving for summary judgment demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute."  *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012).  A genuine issue of material fact exists only if there is evidence to permit a jury to return a verdict for the nonmoving party.  *Id.*  Courts neither judge the credibility of

---

[3] Trevino objects to the contents of the emergency grievance on hearsay grounds.  The Court overrules the objection, as the Court is not considering the grievance for the truth of what it asserts, but merely to establish that a subsequent grievance was filed regarding knee pain.

witnesses nor evaluate the weight of the evidence when addressing a summary judgment motion, see *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009). Rule 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## III. Discussion

Plaintiff brings deliberate indifference claims against Defendants based on their alleged failure to provide adequate medical care for him. The Eighth Amendment's proscription against cruel and unusual punishment "safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Accordingly, 'deliberate indifference to serious medical needs' of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Id.* (quoting *Estelle*, 429 U.S. at 104).

A deliberate indifference claim includes both objective and subjective elements. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). That is, a plaintiff must establish (1) that he suffered from an objectively serious medical condition, and (2) that the defendant acted with deliberate indifference to that condition. See *Roe*, 631 F.3d at 857. As to the first prong, a condition is sufficiently serious if it "has been diagnosed by a physician as mandating treatment or * * * is so obvious that even a lay person would perceive the need for a doctor's attention." *Id.* at 857-58 (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). As to the second prong, a plaintiff must prove that the defendant acted with a "sufficiently culpable state of mind," meaning that the defendant "knew of a substantial risk of harm to the inmate and disregarded the risk." *Id.*

(quoting *Greeno*, 414 F.3d at 653); see also *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006). The Court addresses both of these requirements in turn below.[4]

### A. Objectively Serious Medical Condition

Defendants first argue that summary judgment should be granted to them because Plaintiff has not established an objectively serious medical condition. Dr. Carter acknowledges that chronic and recurring pain may qualify as a sufficiently serious condition that may give rise to a constitutional deliberate indifference claim, see, *e.g.*, *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008), but argues that Plaintiff has failed to produce sufficient evidence to establish that the knee pain he suffered between October 27, 2011 (the date of the steroid injection) and March 20, 2012 (the date that Plaintiff next saw Dr. Carter) was serious. Dr. Carter argues that Plaintiff cannot meet his burden on this prong based on the November 25, 2011 grievance that he submitted. The Court disagrees.

To begin with, Plaintiff's grievance states that, prior to the October 27, 2011, injection, Plaintiff complained of pain and swelling in both knees; it also specified that after the injection, and still without a knee brace, Plaintiff continued to feel "pain in both knees" and that his knees were "clicking" when Plaintiff bent them. See [107-1], at 38. The affidavit that Plaintiff submitted with his complaint also states that his left knee worsened after the October 27, 2011, injection, that both knees hurt, and that he requested medical attention on a weekly basis for his knees. See [1], Compl. at 39. As Plaintiff points out, he also received various treatments for his

---

[4] In his opening brief, Dr. Carter first argued that summary judgment should be granted to him because Plaintiff failed to exhaust his administrative remedies. See [112], Carter Mem. 3-4. This argument appears to be based on the mistaken belief that Plaintiff filed his complaint *prior to* the Administrative Review Board's ("ARB's") denial of Plaintiff's grievance appeal. The ARB denied Plaintiff's appeal on April 11, 2012, [113], Carter SOF ¶¶ 20-21, and Plaintiff filed his complaint thereafter on November 16, 2012. In any event, Carter appears to have abandoned this argument, as he did not address it in his reply brief after Plaintiff responded to Defendant's motion and maintained that he had properly exhausted his administrative remedies.

8

knee, including a steroid injection, anti-inflammatory medication, and a knee sleeve. Based on this evidence, the Court concludes that Plaintiff has established that there is a disputed issue of material fact as to whether his knee condition was sufficiently serious. See *Hayes*, 546 F.3d at 522-23 (observing that "the existence of chronic and substantial pain" may indicate that a prisoner has a serious medical need) (quotation marks and citation omitted).

B.    Dr. Carter's Alleged Deliberate Indifference

Having determined that Plaintiff has presented a triable issue of fact on the objective prong of deliberate indifference, the Court addresses the subjective requirement with respect to Dr. Carter. Plaintiff claims that Dr. Carter was deliberately indifferent to his knee issues based on the delay between the time that Dr. Carter initially recommended or prescribed a knee sleeve for Plaintiff (October 7, 2011) and when the sleeve actually was ordered, or when Dr. Carter completed the prescription for it after it was approved by collegial review (February 14, 2012). Plaintiff also claims deliberate indifference based on the delay between the steroid injection (October 27, 2011) and Plaintiff's follow-up exam with Dr. Carter (March 20, 2012).[5]

As noted, to establish deliberate indifference, Plaintiff must be able to prove that Dr. Carter was aware of his serious medical needs and consciously disregarded them. Deliberate indifference requires a "culpable state of mind," and negligence does not qualify. *Roe*, 631 F.3d at 857 (quoting *Greeno*, 414 F.3d at 653). See also *Walker v. Peters*, 233 F.3d 494, 499 (7th Cir.

---

[5] Plaintiff's motion for summary judgment labels these claims as a failure to intervene by Dr. Carter, *i.e.*, he was allegedly aware of the delays but did not intervene to provide either a knee sleeve or a follow-up exam. A failure to intervene claim, however, requires the defendant's awareness of and realistic opportunity to stop another's unconstitutional acts. *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005) ("[O]fficers who have a realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's right" may be liable under a theory of failure to intervene). The claim begins with another's unconstitutional act. *Id.* As Plaintiff notes, this theory of liability usually applies where a defendant witnesses unconstitutional activity, such as another officer's use of excessive force. Plaintiff does not allege Dr. Carter was aware of others' unconstitutional activity, such that Dr. Carter could have intervened. Instead, Plaintiff contends that Dr. Carter was aware Plaintiff needed but had not received the follow-up exam or the knee sleeve and that Dr. Carter failed to take reasonable action. Such allegations assert deliberate indifference, not a failure to intervene.

2000) ("A doctor might be careless * * * and this carelessness may constitute malpractice. But malpractice alone is not enough to meet the constitutional standard.").

Based on the evidence in the record, the Court concludes that Plaintiff cannot establish deliberate indifference with respect to Dr. Carter. The record indicates that Carter examined Plaintiff on October 7, 2011, noted complaints of knee pain, observed tendinitis, and found no joint disease. Dr. Carter prescribed a knee sleeve and a steroid injection. On October 24, 2011, collegial review approved his request for a knee sleeve. On October 27, 2011, Plaintiff received a steroid injection for his left knee but not the knee sleeve. Dr. Carter noted that Plaintiff should return in three weeks for a follow-up exam, at which time they would consider whether an injection should be performed for the right knee. The record contains no indication that Dr. Carter's actions up to October 27, 2011, constituted deliberate indifference. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) (in order to constitute deliberate indifference, a physician's treatment decision must have been so "far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment"). Plaintiff's deliberate indifference claims involve his inability to receive a knee sleeve and a follow-up care after the steroid injection.

According to Plaintiff's November 25, 2011 grievance, he still had not received a knee sleeve or a follow-up exam by that date, as Dr. Carter had recommended. Additionally, before and after the November 25, 2011 grievance, Plaintiff wrote ten or more medical request slips, in which he sought a follow-up exam, the knee sleeve, and additional treatment for knee pain.

The parties do not dispute that Plaintiff did not have a follow-up appointment with Dr. Carter until March 20, 2012, almost five months after the October 27, 2011, steroid injection and four months after the follow-up exam was supposed to have occurred. Nor do the parties dispute

that the prescription for Plaintiff's knee sleeve was not submitted until February 14, 2012, four months after Dr. Carter recommended one for Plaintiff on October 7, 2011, and three and one-half months after it was approved by collegial review. Also undisputed is the fact that Dr. Carter neither scheduled appointments nor ordered medical equipment, and that both tasks were performed by Stateville's nursing staff. As noted by the Seventh Circuit, "[b]ureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Dr. Carter's failure to schedule the follow-up appointment and order the knee sleeve himself immediately after the October 27, 2011, steroid injection at most may constitute negligence. However, if Dr. Carter was aware that Plaintiff received neither the knee sleeve nor the follow-up appointment and that he was experiencing pain, Dr. Carter's failure to take corrective actions may amount to deliberate indifference. "Prison doctors cannot simply ignore an inmate's complaints of pain." *Gray v. Ghosh*, 2014 WL 3016129, at *5 (N.D. Ill. July 3, 2014) (citing *Arnett*, 658 F.3d at 753) ("A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain.").

Plaintiff's claim of deliberate indifference against Dr. Carter thus depends upon whether he was aware of but disregarded Plaintiff's need for the knee sleeve and additional care. Plaintiff does not allege he spoke to or otherwise communicated with Dr. Carter about Plaintiff's knees between October 27, 2011, and March 20, 2012. The only suggestion that Dr. Carter even could have been aware of Plaintiff's knee issues during that time comes from Plaintiff's November 25, 2011 grievance and the ten or more medical request slips, all of which stated he had received neither the knee sleeve nor the follow-up exam.

With respect to the medical request slips, Plaintiff acknowledges he has no evidence indicating Dr. Carter received or was aware of them. Request slips for medical attention were not routed to Dr. Carter and he usually did not review them. Instead, they were reviewed by the prison's nursing staff which triaged the requests, as well as scheduled appointments. Dr. Carter reviewed medical request slips only if asked to do so by a nurse. If he reviewed a medical request slip, he would initial it and put it in the inmate's medical file. Plaintiff's medical file contains no medical request slips initialed by Dr. Carter. Plaintiff may have submitted ten or more medical request slips, but there is no evidence Dr. Carter was aware of them.

The record is devoid of evidence that Dr. Carter knew about the November 25, 2011 grievance. Although the Health Care Unit's Policy and Procedure Manual states that "[a]ll offender complaints/grievance * * * will be forwarded to the Health Care Unit Administrator's Office" and that "[t]he Administrator and Medical Director will review all offender complaints," it also provides that "[t]he Administrator/Medical Director will assign complaints that do not necessitate intervention at their level to the appropriate staff person for response and corrective action if warranted." [117], Exh. I. Dr. Carter states that he did not investigate every medical grievance, that grievances were routed to the Health Care Unit Administrative Office, and that he reviewed only those grievances brought to his attention. [113], Dr. Carter SOF ¶ 47. If the grievance did not require his intervention, the administrator would assign it to the appropriate staff for investigation and any needed corrective action. *Id.*

Nurse Trevino's response to the grievance does not mention any consultation with Dr. Carter about Plaintiff's complaints. Furthermore, she acknowledges that she did not follow-up with any medical personnel regarding Plaintiff's complaints about ongoing pain and the lack of a

knee sleeve. Her response to the grievance, which essentially parrots notes in Plaintiff's medical file, indicates that she consulted only the medical file.

All the evidence described above indicates that Dr. Carter did not review the November 25, 2011 grievance. At this stage of the case, after the parties have conducted much discovery (Plaintiff, an experienced litigator in this Court, served Dr. Carter with multiple sets of interrogatories and requests for admissions), Plaintiff's failure to "marshal and present the court with the evidence []he contends will prove h[is] case" against Dr. Carter warrants summary judgment in his favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). Dr. Carter's motion for summary judgment therefore is granted, and Plaintiff's motion is denied.

### C. Nurse Trevino's Alleged Deliberate Indifference

Turning to Plaintiff's claim against Trevino, Plaintiff contends that Trevino was deliberately indifferent by failing to provide any care for him after reviewing the November 25, 2011 grievance, such as following up with medical personnel about his complaints, scheduling an appointment for him, or personally examining his knee. Trevino argues that summary judgment should be granted to her, and denied to Plaintiff, because (1) her response to Plaintiff's grievance does not establish her personal involvement in the alleged constitutional violation, (2) there is no evidence that Plaintiff's knee issues worsened after her review of the grievance, and (3) in any event, she is entitled to qualified immunity. The Court addresses these arguments below, and concludes that Trevino's motion for summary judgment must be denied.

With respect to Trevino's first argument, it is true that the denial of a grievance, by itself, is often insufficient to establish the personal involvement that is required to establish a § 1983 claim. "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a

13

constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) (internal quotation marks and citation omitted). Generally, the "mishandling [ ] of grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). See also *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to [an alleged constitutional] violation.").

Here, however, Trevino's failure to take any action after reviewing Plaintiff's November 25, 2011 grievance was not the mere "reject[ion] [of] an administrative complaint about a completed act of misconduct." *George*, 507 F.3d at 609-10. Rather, the record indicates that Trevino was in a "position to ameliorate" Plaintiff's knee pain but failed to do so. See *Ames v. Randle*, 933 F. Supp. 2d 1028, 1037, n. 2 (N.D. Ill. 2013) (distinguishing *George*, because the plaintiff alleged that in addition to denying a grievance, the defendant "had the requisite knowledge of the deprivation [that] the [plaintiff] was subjected to and did not act[.]"). In particular, the record indicates that Trevino could have scheduled Plaintiff to see Dr. Carter or another physician, or, at the very least, referred his complaints to Dr. Carter. To begin, Trevino acknowledged that nothing prevented her from performing such tasks, and Dr. Carter also indicated that, at Stateville, nurses are responsible for reviewing and prioritizing requests for medical attention. In addition, according to the Health Care Unit's Policy and Procedure Manual, grievances were assigned to medical staff when appropriate, and they were to take "corrective action if warranted." [104], Exh. I. Accordingly, the fact that Trevino learned of Plaintiff's knee pain and treatment history through a grievance is irrelevant, as Plaintiff's claim is premised on her failure to properly respond to the complaints set forth in his grievance. The

Court therefore respectfully disagrees with Trevino's contention that she was not personally involved in the alleged deliberate indifference.

As to Trevino's contention that there is no evidence that Plaintiff's condition was worsened by her actions, inaction that "unnecessarily prolong[s] an inmate's pain" can establish deliberate indifference. *Arnett*, 658 F.3d at 753. Plaintiff's November 25, 2011 Grievance complained that he "still fe[lt] pain in both knees." [1] at 37-38, Exh. I. Plaintiff need not establish that his pain worsened because no corrective action was taken. Trevino's failure to address Plaintiff's complaints of pain, if established at trial, may suffice to establish deliberate indifference.

Trevino finally contends that she is entitled to qualified immunity, arguing that it was not clearly established that denying a grievance may give rise to a constitutional deliberate indifference claim. Qualified immunity applies only when the law was not clearly established such that the defendant could not have known that her actions were unconstitutional. *Gruenberg v. Gempeler*, 697 F.3d 573, 578 (7th Cir. 2012). "A constitutional right is clearly established when it would be clear to a reasonable officer that h[er] conduct was unlawful in the situation [s]he confronted." *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001)). "Federal courts have long held that deliberate indifference to prisoners' serious medical conditions violates their Eighth Amendment right to be free from cruel and unusual punishment." *Keller v. Elyea*, 496 F. App'x 665, 667 (7th Cir. 2012) (citing *Estelle*, 429 U.S. at 104); *Cleveland–Perdue v. Brutsche*, 881 F.2d 427, 430 (7th Cir. 1989). Courts also "have ruled that a supervisor may be liable when [s]he turns a blind eye to an inmate's letters requesting medical treatment." *Keller*, 496 F. App'x at 667. Finally, although liability against Trevino is premised on her response (or failure to respond) to only one complaint, "turning [ ] a blind eye to the legitimate medical needs of a

15

prisoner-patient, including his complaints of pain, can constitute a violation of the Eighth Amendment." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 830 (7th Cir. 2009). Trevino accordingly cannot claim that she is protected by qualified immunity in these circumstances.

Having denied Trevino's motion for summary judgment, the Court finally turns to Plaintiff's motion with respect to Trevino. Based on the record, the Court concludes that a reasonable jury could conclude that Trevino was either deliberately indifferent (and thus liable) or merely negligent (and not liable). In particular, although Plaintiff stated in the November 25, 2011 grievance that he still felt pain in his knees, the rest of the grievance chronicled the history of his knee condition prior to the October 27, 2011, steroid injection and described other ailments that were unrelated to his knees. See [1], Compl., Exh. I. If Plaintiff's claim against Trevino rests mainly on the November 25, 2011 grievance (the record is unclear whether she knew of his medical request slips), the grievance's limited information about continued knee pains may not suffice to establish deliberate indifference against Trevino. For example, a reasonable jury might conclude that she simply did not read the grievance with enough attention to fully appreciate or realize the pain that Plaintiff still was experiencing. Because a rationale trier of fact could conclude that Trevino merely was negligent in her review of the grievance, or, alternatively, that she deliberately disregarded Plaintiff's requests for further care, the Court must deny Plaintiff's motion for summary judgment.

## IV. Conclusion

For the reasons stated above, the Court grants Defendant Carter's motion for summary judgment [111] and Plaintiff's motion for an extension of time to file his motion for summary judgment against Carter [144]. The Court denies Defendant Trevino's motion [106] and

16

Plaintiff's motions for summary judgment. [105, 116]. Plaintiff's claim against Carter is dismissed, but Plaintiff may proceed with his deliberate indifference claim under § 1983 against Trevino. This case is set for further status hearing on 10/20/2015 at 9:45 a.m. Counsel for Defendants is requested to make arrangements for Plaintiff to participate by telephone.

Dated: September 28, 2015

United States District Judge